**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRENCE ZEHRER, Derivatively on Behalf of HARBOR INTERNATIONAL FUND, | ) ) ) | Case No. 1:14-cv-00789 |
| | ) | |
| Plaintiff, | ) ) | ORAL ARGUMENT REQUESTED |
| v. | ) ) | |
| HARBOR CAPITAL ADVISORS, INC., | ) ) | |
| Defendant, | ) ) | |
| -and- | ) ) | |
| HARBOR INTERNATIONAL FUND, | ) ) | |
| Nominal Defendant. | ) ) | |

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS HARBOR CAPITAL ADVISORS, INC. AND HARBOR
<u>INTERNATIONAL FUND'S MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF THE FACTS ..................................................................................4

        A.      Regulation of Mutual Fund Advisory Fees................................................4

        B.      Defendant Harbor Capital Charged Excessive Fees Relative to Services
              Provided ......................................................................................................5

        C.      The Board of Trustees of the Harbor Funds ...............................................7

III.    ARGUMENT ...............................................................................................................7

        A.      Standard on a Motion to Dismiss................................................................7

        B.      Standard on Section 36(b) Claims ..............................................................9

        C.      Plaintiff Has Properly Pled a Section 36(b) Claim ..................................10

              1.       Nature and Quality of Services ....................................................10

              2.       Economies of Scale.......................................................................15

              3.       Board's Lack of Conscientiousness...............................................17

              4.       Other Factors.................................................................................18

        D.      Plaintiff's Section 36(b) Claims Are Timely............................................19

IV.    Plaintiff's Section 36(b) and 47(b) claims against Harbor Funds are Properly
        Stated........................................................................................................................19

V.     CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGES**

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
    464 F.3d 338 (2d Cir. 2006)...................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................8

*Briggs v. Ohio Elections Comm'n*,
    61 F.3d 487 (6th Cir. 1995) ...............................................................8

*Courie v. Alcoa Wheel & Forged Prods.*,
    577 F.3d 625 (6th Cir. 2009) .............................................................8

*Curran v. Principal Mgmt. Corp.*,
    No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), *vacated*
    *in part on other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)....................*passim*

*Curran v. Principal Mgmt. Corp.*,
    No. 4:09-cv-00433-RP-CFB (S.D. Iowa Jan. 15, 2010)....................................16

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984)..........................................................................20

*Davis H. Elliot Co. v. Caribbean Utils. Co.*,
    513 F.2d 1176 (6th Cir. 1975) ...........................................................8

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968) ............................................................19

*Fox v. Reich & Tang, Inc.*,
    692 F.2d 250 (2d Cir. 1982)...............................................................20

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    694 F.2d 923 (2d Cir. 1982)..................................................3, 9, 10, 14

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)...........................................................................8

*Howell ex rel. Howell v. Waterford Pub. Sch.*,
    731 F. Supp. 1314 (E.D. Mich. 1990)...............................................7

*In re Am. Mut. Funds Fee Litig.*,
    No. CV-04-5593 GAF, 2009 WL 5215755 (C.D. Cal Dec. 28, 2009) ...........................18

*In re Mut. Funds Inv. Litig.*,
    384 F. Supp. 2d 873 (D. Md. 2005) ...............................................19

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
    743 F. Supp. 2d 744 (W.D. Tenn. 2010)...........................................................19

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    528 F. Supp. 2d 332, 339 (S.D.N.Y. 2007).......................................................16

*In re Scudder Mut. Funds Fee Litig.*,
    No. 04 Civ. 1921(DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ........................18

*Joe Powell & Assocs., Inc. v. Int'l Tel. & Tel. Corp.*,
    22 B.R. 588 (E.D. Tenn. 1982) .........................................................................8

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010).................................................................................*passim*

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
    No. 1:11-cv-01083-RMB-KMW (D.N.J. Nov. 14, 2011) ................................12

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
    No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)...........................*passim*

*Madison v. Purdy*,
    410 F.2d 99 (5th Cir. 1969) ...............................................................................8

*Mathers Fund, Inc. v. Colwell Co.*,
    564 F.2d 780 (7th Cir. 1977) .............................................................................19

*Millenco L.P. v. MEVC Advisors, Inc.*,
    No. CIV. 02-142-JJF, 2002 WL 31051604 (D. Del. Aug. 21, 2002) .................9

*Nuchols v. Berrong*,
    141 F. App'x 451 (6th Cir. 2005).......................................................................8

*Penn. v. Salomon Bros. All Cap Value Fund*,
    425 F. App'x 25 (2d Cir. 2011).........................................................................17

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
    772 F. Supp. 2d 1100 (N.D. Cal. 2011) ...........................................................17

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)............................................................................................8

*Sivolella v. AXA Equitable Life Ins. Co.*,
    No. 11-4194 (PGS), 2012 WL 4464040 (D.N.J. Sept. 25, 2012)................2, 13

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
    783 N.Y.S.2d 758 (2004) .................................................................................14

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ............................................................................ 4, 5, 18, 20

*United States v. Corinthian Colleges*,
    655 F.3d 984, 999 (9th Cir. 2011) ................................................................................ 16

*Westlake v. Lucas*,
    537 F.2d 857 (6th Cir. 1976) ........................................................................................ 8

*Wiener v. Eaton Vance Distribs. Inc.*,
    No. 10-10515-DPW, 2011 WL 1233131 (D. Mass. Mar. 30, 2011) ................................ 19

## STATUTES, RULES & OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    §1356, at 590 (West 1969) ............................................................................................ 7

Federal Rules of Civil Procedure .......................................................................................... 7
    Rule 12(b)(6) ................................................................................................................ 7

Investment Company Act of 1940 .............................................................................. *passim*
    15 U.S.C.
        §80a-35(b) ........................................................................................... *passim*
        §80a-46 ................................................................................................. *passim*

Plaintiff Terence Zehrer ("Plaintiff") hereby submits this omnibus memorandum of law in opposition to: (i) defendant Harbor Capital Advisors, Inc.'s ("Harbor Capital" or "Defendant") Motion to Dismiss (Document No. 43); and (ii) nominal defendant Harbor International Fund's (the "Fund" or "Harbor Funds") Motion to Dismiss (Document No. 48).

## I.    INTRODUCTION

As detailed in the Verified Complaint (Document No. 1) (the "Complaint"), Harbor Capital was hired as the investment adviser charged with managing the investments of the Harbor Funds and then delegated its investment management responsibilities to its sub-adviser Northern Cross, LLC ("Northern Cross").  By doing so and retaining a substantial portion of the proceeds for itself, Harbor Capital violated Section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended by 15 U.S.C. §80a-35(b) ("Section 36(b)").[1]

Defendant Harbor Capital has filed a motion to dismiss the Complaint (the "Motion to Dismiss") (Document No. 43) claiming that Plaintiff has not alleged sufficient facts to show that Harbor Capital has charged the Fund shareholders disproportionately large fees relative to the services rendered for the past year.  But in every single analogous case where a plaintiff shareholder has raised similar sub-adviser allegations in support of a Section 36(b) claim (i.e., that the investment adviser subcontracted most of the investment management services and improperly retained a substantial portion of the advisory fees for itself), the court has found them to be well pled and denied motions to dismiss.  *See, e.g.*, *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083 (RMB/KMW), 2012 WL 6568409, at *3 (D.N.J. Dec. 17, 2012) (denying motion to dismiss where the plaintiff alleged that defendant adviser had paid "sub-advisors to

---

[1] Pursuant to the Agreed Motion to Set Briefing Schedule (Document No. 51) filed on April 4, 2014 and the Court's Notification of Docket Entry (Document No. 53) filed on April 8, 2014, Plaintiff files his brief in excess of fifteen pages.

perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services");[2] *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194 (PGS), 2012 WL 4464040, at *1, *5-6 (D.N.J. Sept. 25, 2012) (denying motion to dismiss complaint alleging similar allegations); *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2010 WL 2889752, at *2, *12 (S.D. Iowa June 8, 2010) (same), *vacated in part on other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011).

Ignoring the above line of directly on point cases, Harbor Capital resorts instead to a number of irrelevant and fact-based arguments to challenge Plaintiff's allegations. First, Harbor Capital goes outside the pleadings to launch an attack on Plaintiff's counsel for having filed other Section 36(b) cases. Harbor Capital attaches these other complaints to try to demonstrate that the Complaint here was purportedly "copied" from a "template" and that it contains only general allegations about the mutual fund industry as a whole with no specific allegations about Harbor Funds and Harbor Capital. The fact that Plaintiff's counsel are litigating other Section 36(b) cases has absolutely no bearing on whether the particular allegations in this Action (as defined herein) pass muster. Moreover, the argument ignores the multitude of specific allegations contained in the Complaint that describe in detail the disproportionate relationship between the secondary services provided by investment adviser Harbor Capital and the substantial cut of the fees it retained in return— allegations that courts in the above line of cases have found to be sufficiently specific to overcome a motion to dismiss.

Second, Harbor Capital argues that even if it delegated the investment management services, its fee was warranted based on the administrative and supervisory tasks it performed with only minimal oversight from the Fund's Board of Trustees (the "Board"). Courts have made

---

[2] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

clear though that it is not appropriate to engage in such a fact-driven inquiry regarding the quality and quantity of services performed by the investment adviser and the extent to which they were shared with the board of directors at the pleading stage. *See Kasilag*, 2012 WL 6568409, at *9 (rejecting a similar argument). All Plaintiff was required to plead, which he has done here, is that Harbor Capital was primarily hired to manage the investments of the Fund and that these primary services were passed on to a sub-adviser. ¶¶9, 15-21.[3]

Third, Defendant argues that the Court should defer to it on the reasonableness of its fees because the Board negotiating the fees on behalf of the Harbor Funds was purportedly independent and conducted a thorough process. This is also a fact-intensive inquiry improperly raised at the motion to dismiss stage. Indeed, Harbor Capital impermissibly relies on a number of documents outside the four corners of the Complaint in an attempt to show that the Board was purportedly independent and that its process was robust. On a motion to dismiss, however, when no discovery has been undertaken, the Court is limited to considering the factual allegations in the Complaint and any documents referenced in the Complaint (which here includes only the advisory and sub-advisory agreements entered into by Harbor Capital), and therefore must ignore the U.S. Securities Exchange Commission ("SEC") filings Defendant offers up to the Court to try (unsuccessfully) to rebut Plaintiff's allegations.

Fourth, Defendant argues that Plaintiff has not alleged facts in support of some of the *Gartenberg* Factors (as defined herein), which is the framework generally used by courts to analyze whether the investment adviser's fees are excessive.[4] This argument is misguided as

---

[3] All paragraph references ("¶___" or "¶___") are to Plaintiffs' Complaint filed February 4, 2014 (Document No. 1).

[4] *See, e.g.*, *Curran*, 2010 WL 2889752, at *3, *9; *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982).

Plaintiff is not required to plead and prove each factor. Rather, Plaintiff can state a Section 36(b) claim by "alleging any combination of facts that plausibly support an inference that a particular fee, given [the totality of] circumstances, is disproportionately large to the services rendered in exchange for that fee." *Curran*, 2010 WL 2889752, at *9. While Plaintiff has met this relatively lenient pleading standard based solely on the above sub-adviser allegations, Plaintiff has also alleged additional facts that further bolster his claim that Harbor Capital overcharged the Fund shareholders. Most notably, Plaintiff has pled that: (i) Harbor Capital has taken advantage of economies of scale in the mutual fund industry to dramatically increase its profits without passing any of these benefits on to shareholders; and (ii) the Board was conflicted and lacks the time and resources necessary to negotiate a fair advisory fee agreement with Harbor Capital.

Taken together, Plaintiff's factual allegations properly state a Section 36(b) claim under the liberal federal pleading standard and Harbor Capital's Motion to Dismiss must be denied.[5]

The Court should also deny Harbor Funds' separate motion to dismiss (Document No. 48) as well because Plaintiff has brought this derivative action on its behalf under Section 36(b) and Section 47(b) of the ICA, as amended by 15 U.S.C. §80a-46 ("Section 47(b)") and therefore has properly named Harbor Funds as a nominal defendant in this Action.

## II.    STATEMENT OF THE FACTS

### A.    Regulation of Mutual Fund Advisory Fees

The relationship between a mutual fund and its adviser is regulated by the ICA. This relationship is fraught with potential conflicts of interest given that typically the investment adviser has created the fund, selected the fund directors, managed the fund's investments, and

---

[5] While Plaintiff believes he has alleged sufficient facts to state his breach of fiduciary claims, should the Court find otherwise, Plaintiff requests the right to amend the Complaint to cure any pleading deficiencies the Court may identify.

provided other services. *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 338 (2010). This creates potential conflicts of interest between a mutual fund and its adviser that precludes them from negotiating their advisory agreement at arm's-length. *Id.*

Because of its concerns about the potential for abuse inherent in the structure of investment companies, Congress created certain protections for mutual fund shareholders under the ICA. *Id.* at 339; ¶¶10-12. Among them, Section 36(b) of the ICA imposed upon advisers a fiduciary duty not to overcharge the fund shareholders for any services it provides and provides shareholders with a private right of action to enforce this duty. *See* Section 36(b); *Jones*, 559 U.S. at 339-40; ¶12. In addition, the board of directors are required to "'review and approve the contracts of the investment adviser'" annually. *See Jones*, 559 U.S. at 339-40; Section 36(b).

### B. Defendant Harbor Capital Charged Excessive Fees Relative to Services Provided

Defendant Harbor Capital is the investment adviser to the Harbor Funds family of mutual funds, which includes the Fund. ¶¶8-9. Under its advisory agreement with the Fund, Harbor Capital was primarily hired to perform investment management services (i.e., make decisions based on its expertise and research as to what assets or securities to buy, retain, and sell for the Fund). ¶¶9, 15. In return for agreeing to provide these main services, Harbor Capital receives substantial fees—$225 million in 2012 alone. ¶¶19-20, 26.

Despite its agreement to do so, Harbor Capital, however, does not actually perform these investment management duties itself. Instead, Harbor Capital largely subcontracts them out to a sub-adviser (Northern Cross) to perform. ¶¶2, 8, 16-17, 19-21. Under the parties' sub-advisory agreement, Harbor Capital not only passed off the investment decision-making responsibilities to Northern Cross, it ***required its sub-adviser to assume all liability for the investment decisions it makes***. ¶17. Having wholly delegated the investment decision-making to another entity, Harbor

Capital's only remaining responsibilities under its advisory agreement are to perform minor administrative tasks and "supervise" Northern Cross, duties it shares with the Board. ¶18.

Despite subcontracting the investment management responsibilities to its sub-adviser, Harbor Capital retains nearly half of the fees (45%) it receives from the Fund, which amounted to total fees retained of over $100 million in 2012 alone. ¶¶19-20.

Since entering into its "fixed fee percentage" advisory agreement in 2006, Harbor Capital has seen the amount of its fees grow exponentially (more than three times) as a result of corresponding increases in the net asset value of the Fund over this period of time. ¶¶3, 24. Yet at the same time, its costs have leveled off because of the well-established economies of scale enjoyed by the mutual fund industry. ¶¶22-25. Indeed, both the SEC and the Government Accountability Office have conducted comprehensive studies demonstrating that the amount of work and costs required to operate a mutual fund does not increase proportionately with the assets under management. ¶23. For example, a portfolio manager can invest $100 million as easily as $1 billion with only incremental increases in expenses. ¶22. For this reason, it is typical for mutual funds to have breakpoints in the advisory fee schedules whereby as the net assets reach certain levels, the adviser's fee percentage decreases in order to account for these economies of scale. *Id.* The advisory agreement the Board entered into with Harbor Capital in 2006 included only a single breakpoint—reducing the management fee percentage by only ten basis points (i.e., 0.1%) for all assets above $12 billion. ¶¶19-24. Despite the dramatic increases in Harbor Capital's advisory fees and the reduction in its relative costs since 2006, the Board, however, has failed to renegotiate any of the advisory fee agreements with Harbor Capital to include additional breakpoints to bring Harbor Capital's fees in line with its costs. ¶¶29-35.

### C.     The Board of Trustees of the Harbor Funds

Under the ICA, the board of trustees of each mutual fund is required to carefully review and either approve or, if necessary, renegotiate the terms of each advisory fee agreement on an annual basis. *Jones*, 559 U.S. at 340. The directors of the Harbor Funds, who work only part-time in these positions, have responsibility for managing over twenty-nine mutual funds in the Harbor Funds complex at the same time, meaning they have minimal time and resources to devote to even reviewing, much less renegotiating, the advisory agreements for each fund. ¶¶8, 29-34.

Even if they had the time and resources to do so, the Board lacks the motivation to renegotiate these agreements to ensure the fee structures are fair and proportionate because of the incestuous relationship between the Board and the financial advisers. ¶29-34. As recognized by Congress in enacting the ICA, there is an inherent conflict of interest between the boards of directors and the investment adviser as a result of the influence wielded by investment advisers over the funds they create and the boards of directors they appoint. *Jones*, 559 U.S. at 338-39; ¶¶10-12. This conflicted relationship is present here, as the Chairman of the Board, David Van Hooser, also serves as the Chief Executive Officer ("CEO"), Chief Financial Officer, and a director of Harbor Capital. ¶¶30, 33.

## III.     ARGUMENT

### A.     Standard on a Motion to Dismiss

The court's function in ruling on a motion to dismiss brought based on Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") grounds is to "test[ ] the legal sufficiency of [the] complaint, not the facts that support it." *Howell ex rel. Howell v. Waterford Pub. Sch.*, 731 F. Supp. 1314, 1316 (E.D. Mich. 1990) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356, at 590 (West 1969)). In so doing, the court must

construe the complaint in the light most favorable to the plaintiff while also accepting all the factual allegations contained therein as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) (A motion to dismiss under Rule 12(b)(6) must be denied "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975) (In reviewing a dismissal on the pleadings, "well pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion."). So long as such factual allegations support any plausible claim for relief, the Court must deny the Motion to Dismiss for failure to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 580-81 (2007); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-30 (6th Cir. 2009) (noting that motions to dismiss are designed solely to "screen out cases" which are "'implausible'" to warrant relief); *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969) ("[A] complaint should not be dismissed unless there is no possibility that the plaintiff can recover under the allegations of [the] complaint."). Because of this lenient pleading standard, "motions to dismiss [under Rule 12(b)(6) are ordinarily disfavored, rarely granted and [ ] any doubt is resolved in favor of nondismissal." *Joe Powell & Assocs., Inc. v. Int'l Tel. & Tel. Corp.*, 22 B.R. 588, 592-93 (E.D. Tenn. 1982); *Nuchols v. Berrong*, 141 F. App'x 451, 453 (6th Cir. 2005).

Here, Defendant argues that Plaintiff has failed to adequately plead facts showing that Defendant, as advisor to the Fund, charged excessive fees in violation of Section 36(b) of the ICA. Defendant is wrong. As shown below, Plaintiff has properly stated his Section 36(b) claim against Defendant.

**B.      Standard on Section 36(b) Claims**

Pursuant to Section 36(b) of the ICA, where the investment adviser receives a fee "that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining," investments advisers are liable for breaching their fiduciary duties. *Jones*, 559 U.S. at 346.

As affirmed by the Supreme Court in *Jones*, courts analyze whether the adviser has charged such an excessive fee under the factors set forth in the *Gartenberg* decision (the "*Gartenberg* Factors"):  (1) the nature and quality of services rendered; (2) the profitability of the fund to the investment adviser; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures;   and   (6)   the   independence   of   the   unaffiliated   directors   and   the   care   and conscientiousness with which they performed their duties.   *Jones*, 559 U.S. at 344 & n.5. Although this analysis is meant to be utilized on a motion for summary judgment or at trial where discovery has been conducted and a full factual record exists, *see, e.g.*, *id.* at 353-55 (upholding the *Gartenberg* approach on a motion for summary judgment), many, but not all, courts also apply it on a motion to dismiss.  *See, e.g.*, *Curran*, 2010 WL 2889752, at *3 (analyzing the *Gartenberg* Factors); *Kasilag*, 2012 WL 6568409, at *2-7 (applying the *Gartenberg* analysis); *cf. Millenco L.P. v. MEVC Advisors, Inc*., No. CIV. 02-142-JJF, 2002 WL 31051604, at *3, n.3 (D. Del. Aug. 21, 2002) (refusing to apply the *Gartenberg* Factors on a motion to dismiss because "the Gartenberg decision does not set a pleading standard, but rather is helpful only after the complete evidentiary record has been established").  For purposes of this motion, Plaintiff will assume the Gartenberg Factors analysis applies.

While Defendant implies in its brief that Plaintiff is required to plead facts in support of each of these factors to sustain a Section 36(b) claim, that is simply not true.  *See Curran*, 2010 WL 2889752, at *9 ("[p]laintiffs need not make a conclusive showing of each of the *Gartenberg*

factors"); *Kasilag*, 2012 WL 6568409, at *2 (stating that the plaintiff "need not address all of the Gartenberg factors to survive a motion to dismiss"). Rather, to state a Section 36(b) claim, the plaintiff must merely allege "any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large relative to the services rendered." *Curran*, 2010 WL 2889752, at *9; *Kasilag*, 2012 WL 6568409 at *3 (analyzing "all relevant circumstances, viewed collectively" in determining whether the complaint demonstrates a plausible claim for relief under Section 36(b)).

As shown below, even assuming the *Gartenberg* analysis applies on this Motion to Dismiss, Plaintiff has pled sufficient facts, when taken as a whole, to overcome this Motion to Dismiss.

## C.    Plaintiff Has Properly Pled a Section 36(b) Claim

### 1.    Nature and Quality of Services

#### a.    Plaintiff's Sub-Adviser Allegations Alone Demonstrate that Harbor Capital Charged Excessive Fees

Plaintiff has properly pled that Defendant charged disproportionately large fees for its services based solely on his allegations that Harbor Capital assigned the bulk of its responsibilities under its advisory agreements with the Fund to a sub-adviser and retained a substantial portion of the fees for itself. ¶¶19-28. As alleged in the Complaint and reflected by the language of the advisory and sub-advisory agreements, the Fund hired Harbor Capital to manage the investment program for the Fund and Harbor Capital, in turn, wholly delegated these investment decisions—and any resulting liability exposure—to Harbor Capital's sub-adviser. *See* ¶¶15-18. As alleged in the Complaint and noted in the other court decisions, these are the most important and time and cost-intensive responsibilities of a mutual fund adviser. ¶¶26-28. While Harbor Capital was also assigned to perform certain administrative and supervisory tasks for the

Fund, these services are far less important and cost and time intensive and are shared with the Board. Despite retaining sub-advisers to perform the main duties, Harbor Capital still retained a major portion of the fees—over 45%. ¶¶19-20.

Notably and wholly ignored by Harbor Capital, in *every single case* in which a mutual fund shareholder based its Section 36(b) claims on similar sub-adviser allegations with the same degree of specificity, the court found such facts to be more than sufficient to avoid dismissal on the pleadings. In fact, *Defendant does not and cannot cite to a single case in which claims like those alleged have been dismissed at the pleading stage*. *See* Motion at 6-24.[6]

For example, in *Kasilag*, the court denied a motion to dismiss where the shareholder plaintiffs had brought a Section 36(b) claim based on strikingly similar allegations that the advisor had contracted most of its investment management services to a sub-adviser (leaving, the adviser, like Harbor Capital, to perform only general supervisory responsibilities) and then retained a major portion of the fee. *See Kasilag*, 2012 WL 6568409, at *3. In its decision, the court made clear that the sub-adviser allegations alone were sufficient to state a plausible claim under Section 36(b) and the other facts merely provided additional support. Specifically, the court held that plaintiffs' allegations that the adviser "pays sub-advisors to perform 'substantially all' of the investment management services that it provides to the Funds at a fraction of the fee it charges for such services…. raise[ ] a plausible inference that [the adviser's] fees are excessive under [Section] 36(b)." *See Kasilag*, 2012 WL 6568409, at *3. In addition to having similar allegations, this Complaint also includes many of the same charts and tables detailing the comparison of assigned services and differences between fees received by the adviser and sub-advisers that the court in *Kasilag* found persuasive in denying the motion to dismiss. *See id.*

---

[6] "Motion" refers to Defendant's Memorandum in Support of Motion of Harbor Capital Advisors, Inc. to Dismiss filed April 8, 2014 (Document No. 55).

(praising plaintiffs for supporting their allegations with "multiple tables," which allowed them to plead with greater specificity); *compare* Second Amended Complaint, ¶¶46-50, *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 1:11-cv-01083-RMB-KMW (D.N.J. Nov. 14, 2011), attached as Exhibit A to the Declaration of Stephen J. Oddo in Support to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants Harbor Capital Advisors, Inc. and Harbor International Fund's Motion to Dismiss ("Oddo Decl."), *with* Complaint, ¶¶19-20, 24 (including many of the same tables and charts as in the *Kasilag* second amended complaint).

The court in *Curran* also denied a motion to dismiss a Section 36(b) claim largely based on nearly identical allegations that the adviser had charged the mutual funds significantly more than it had paid out to the sub-advisers who had provided the bulk of investment management services while the adviser had merely selected and supervised them. Specifically, the court held that the plaintiffs' allegations that "[the advisor] charges more than the subadvisors, who allegedly provided the bulk of investment advice" and "that the charges do not reflect the benefits derived from economies of scale … all support a reasonable inference that [the advisor] collected excessive fees for its investment advising services." *Curran*, 2010 WL 2889752, at *9. While the court also gave some credit to the plaintiffs' allegation that the investment adviser had charged its institutional clients less than the fund shareholders, this was a secondary factor underlying its decision. As the Supreme Court held in *Jones*, such a comparison between the fees an investment adviser charges its mutual fund shareholders and its institutional clients is not entitled to much weight in determining whether the fees charged to the fund shareholders were excessive under Section 36(b). *See Jones*, 559 U.S. at 350 (stating that courts should be "wary" of comparing fees charged to an adviser's fund shareholders versus its institutional clients).

In a third analogous case, the court also denied a motion to dismiss where the plaintiff, like Plaintiff here, brought Section 36(b) claims based on allegations that the adviser had entered

into contracts with sub-advisers who performed nearly all of the investment management services for the funds, but had retained a good portion of the fees. *Sivolella*, 2012 WL 4464040, at *5-6.

Lacking pertinent authority, Harbor Capital does not even attempt to rebut Plaintiff's core allegation that Harbor Capital wholly delegated the primary investment management services to its sub-adviser and kept nearly half of the fees. Rather, Harbor Capital resorts to an attack on Plaintiff's counsel Robbins Arroyo LLP's ("Robbins Arroyo") litigation of these types of cases, mischaracterizations about the level of specificity of the allegations in the Complaint, and premature factual examinations.

As a preliminary matter, Harbor Capital makes the unsubstantiated claim that because Robbins Arroyo is counsel in other Section 36(b) actions, that somehow affects the validity of the allegations here. Defendant is truly grasping at straws. The fact that Plaintiff's counsel has filed other Section 36(b) cases has no bearing on whether the allegations here are sufficient and Harbor Capital's reference to the other complaints is irrelevant.

Second, Harbor Capital claims that the Complaint is comprised mostly of "generalized allegations" with few facts about the Fund and Harbor Capital. Harbor Capital's selective reading of the Complaint overlooks the detailed allegations described above that are particular to this case. ¶¶15-21, 24, 26-30. While Plaintiff also included general allegations about the mutual fund industry, he did so only to support and provide context for his core allegations. *See, e.g.*, ¶¶22-23. The above line of "sub-adviser" cases also contained a similar mix of general and specific allegations about the mutual fund industry and the particular mutual fund and adviser at issue, which the Courts found to be more than sufficient to survive a motion to dismiss.[7] *See,*

---

[7] In their reply, Defendant will likely attempt to distinguish this case from the ones above by citing to minor factual differences, such as comparing the percentage of advisory fees retained by Harbor Capital to the percentage of fees retained by the advisers in the other cases. Any such distinctions, even if they exist, are without significance as these courts focused on the core

*e.g.*, *Curran*, 2010 WL 2889752, at *9 (denying motion to dismiss even where "some of the paragraphs in the pleading are generic and lack particulars").

These cases illustrate that while the burden of proving a Section 36(b) claim on a motion for summary judgment or at trial is demanding, as reflected by the *Jones* and *Gartenberg* decisions (which involved such proceedings),[8] federal courts are less demanding in deciding whether the allegations supporting these claims are sufficient to overcome a motion to dismiss. This makes sense, particularly given that Section 36(b) cases involve corporate breaches of fiduciary duties where much of the information needed to fully detail the wrongdoing resides with-and is kept confidential by-the corporate defendants, and therefore is only available in discovery.[9] *See, e.g.*, *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 774 (2004) (recognizing that corporate defendants alone possessed information necessary to uncover the extent of their misconduct).

Third, Defendant Harbor Capital tries to validate its enormous fees by citing to the administrative and supervisory services assigned to them in the advisory fee agreement, which it claims to have performed with only minimal oversight from the Board. *See* Motion at 15-17. This argument is improper because it invites the Court to engage in an inappropriate factual inquiry on a motion to dismiss—requiring it to weigh the significance of these duties vis à vis the

---

allegations—that the advisers kept a substantial portion of fees despite delegating the investment management services-in denying the motions to dismiss and eschewed setting numerical thresholds for what constitutes an excessive fee. *See, e.g.*, *Curran*, 2010 WL 2889752, at *2, *12 (denying motion to dismiss where adviser kept a significant portion of the fees).

[8] *See Jones*, 559 U.S. at 335 (involving an appeal of a grant for summary judgment); *Gartenberg*, 694 F.2d at 925 (involving an appeal at a trial judgment).

[9] Incredibly, Defendant claims that the Fund's self-serving SEC filings contain all of the information Plaintiff needs. As Defendant is well aware, the Fund and Harbor Advisers maintain a host of non-public corporate records, such as Board minutes, that are relevant to understanding whether the advisory fees negotiated, reviewed, and approved by the Board were excessive.

delegated investment management responsibilities and determine the extent to which Harbor Capital (as opposed to the Board) carried the burden and cost of performing them. Similar fact-driven arguments were raised by the defendants in *Curran* and *Kasilag* and were roundly rejected for these very reasons. *See, e.g.*, *Curran*, 2010 WL 2889752, at *9 (finding that defendants' arguments attacking the plaintiffs' allegations improperly "ask the Court to engage in a factual inquiry" on a motion to dismiss); *Kasilag*, 2012 WL 6568409, at *3 (rejecting defendants' argument that "it provides the Funds with extensive administrative and investment management services that are not delegated to the sub-advisers" as a merits argument that is more appropriate for summary judgment).

### 2. Economies of Scale

While the crux of Plaintiff's Section 36(b) claim is his sub-adviser allegations, he has also alleged a number of other facts that bolster Plaintiff's claim that the fees received by Harbor Capital were excessive. Among others, Plaintiff has alleged facts showing that Harbor Capital has not passed on the benefits achieved from economies of scale to the Harbor Funds' investors. ¶¶22-25. Specifically, it is well-established in the mutual fund industry that as a mutual fund's assets grow in size; its costs do not rise commensurately. ¶22. For this reason, many advisory fee schedules have breakpoints (i.e., discounted fee ratios at specified asset levels) that result in lower advisory costs (as a percentage of fund value) as the amount of assets increase. *Id*. Here, by contrast, Harbor Capital's advisory fees include only one breakpoint, which was put in place eight years ago. The Fund's assets have dramatically increased over the last eight years, resulting in commensurate large scale increases in fees received by Harbor Capital. Even though its costs

have leveled off, the Board has not negotiated any additional breakpoints to account for these economies of scale.[10] ¶¶24-25, 29, 31-34.

Defendant counters that Plaintiff's economies of scale argument is too general and, that he has not alleged any facts about Harbor Capital's specific costs. Such specificity, however, is not required (nor is it even available to Plaintiff) to show this factor is present. *See, e.g.*, Amended Complaint, ¶¶60-69, *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433-RP-CFB (S.D. Iowa Jan. 15, 2010) (similarly relying on allegations about economies of scale of mutual fund industry generally rather than the mutual funds at issue), attached as Exhibit B to the Oddo Decl.; *see also Curran*, 2010 WL 2889752, at *8 (noting that the complaint contains "many generalized statements about the mutual fund industry," but still crediting plaintiffs' "economies of scale" argument supporting their Section 36(b) claim).

More importantly, Plaintiff is not relying solely on his economies of scale allegations to show that Harbor Capital's fees are disproportionately large, but merely included these facts to bolster his primary sub-adviser allegations. Thus, this case is readily distinguishable from the decisions Defendant cites in support of its argument against this factor, none of which involved the sub-adviser factual allegations. *See, e.g.*, *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921(DAB), 2007 WL 2325862, at *1 (S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss Section 36(b) claim which was based on entirely different allegations than the ones alleged in the Complaint); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 339

---

[10] Defendant argues that Harbor Capital has recently reduced its advisory fees through voluntary fee waivers. But such an argument is improper because it is based on a document that was neither attached to nor incorporated into in the Complaint, and therefore may not be considered on a motion to dismiss. *See, e.g.*, Motion at 21 (citing to and attaching a Prospectus); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (permitting outside documents to be considered on a motion to dismiss only if either physically attached to or referenced in the complaint).

(S.D.N.Y. 2007) (same), *aff'd in part, vacated in part on other grounds sub nom. R.W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25 (2d Cir. 2011).

### 3.    Board's Lack of Conscientiousness

Plaintiff has also alleged facts showing the Board's lack of conscientiousness. Specifically, Plaintiff alleges that the Board was unable to adequately review and approve the advisory fee agreements given the vast number of Harbor Funds it is charged with overseeing and the conflicts of interest between it and Harbor Capital, particularly the fact that the Chairman of the Board also happens to serve as the CEO and a director of Harbor Capital.  ¶¶29-34. Defendant not only takes issue with the sufficiency of these allegations, but claims that under *Jones* the Board's agreement to the Harbor Capital fees is entitled to deference since the Board was allegedly independent and its review process was robust.  Motion at 10-14.  Defendant is entitled to no such deference on this Motion to Dismiss because there are no facts in the record showing this to be true (in fact, as shown above, the Complaint contains only facts showing the contrary).  ¶¶29-34.

Rather, Defendant relies on a number of self-serving outside documents to demonstrate that Board members were independent and engaged in a robust process.  None of the documents referenced by Harbor Capital (with the exception of the advisory and sub-advisory agreements) are mentioned in the Complaint, have been the subject of discovery and therefore must be excluded for purposes of this motion.  *See, e.g.*, Motion at 7-8, 11, 13, 21-24 (citing to outside self-serving documents, including annual reports, statements of additional information, and other SEC filings, that were not referenced in the Complaint); *See Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d  1100, 1109 (N.D. Cal. 2011) (holding that a court may take judicial notice merely of the existence of SEC filings, but not for the truth of facts asserted

- 17 -

therein); *Corinthian Colleges*, 655 F.3d at 999 (permitting outside documents to be considered on a motion to dismiss only if either physically attached to or referenced in the complaint); *Curran*, 2010 WL 2889752, at *9 (refusing to consider documents offered by defendants showing the board was independent and acted conscientious).[11]

### 4. Other Factors

Defendant also contends that Plaintiff has failed to present any factual allegations on the other *Gartenberg* Factors and that this somehow is fatal to Plaintiff's Section 36(b) claims. Again, Plaintiff needs not allege facts in support of each Gartenberg factor to plead and prove that Defendant charged grossly excessive fees. While Plaintiff, like the plaintiffs in *Kasilag* and *Curran*, has adequately pled his Section 36(b) claim based primarily on sub-adviser allegations, he has also included other factual allegations to bolster his case. Based on the totality of these allegations, Plaintiff has alleged a plausible claim for relief, as reflected by the above line of cases. Not able to rebut this authority, Defendant cites to a number of inapposite cases, none of which involved the sub-adviser allegations that form the core of this Complaint. *See, e.g., Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 344-45 (2d Cir. 2006) (granting motion to dismiss Section 36(b) claim where the plaintiff did not include a single allegation about the advisory fees); *Scudder*, 2007 WL 2325862, at *1, *19 (granting motion to dismiss Section 36(b) claim based on entirely different allegations than ones alleged in the Complaint); *In re Am. Mut. Funds Fee Litig.*, No. CV-04-5593 GAF (RNBx), 2009 WL 5215755, at *28-30, *56 (C.D. Cal Dec. 28, 2009) (dismissing section 36(b) claims that did not include sub-adviser allegations).

---

[11] It would be particularly inappropriate and unfair for the Court to credit Defendant's self-serving assertions about the independence and process of the Board given that Plaintiff has had no opportunity to take discovery and probe into the Board's independence and processes.

- 18 -

### D. Plaintiff's Section 36(b) Claims Are Timely

In his Complaint, Plaintiff makes allegations about Harbor Capital's fees for 2012 (rather than 2013) because those were the publicly available figures at the time Plaintiff and his counsel investigated the Section 36(b) claims in support of the Complaint. Since then, the Fund has publicly disclosed the amount of fees paid to Harbor Capital for 2013, which reflects that Harbor Capital received comparable fee levels as the previous year, and therefore does not affect the basis for Plaintiff's Section 36(b) claims in the least. Accordingly, this is not a ground for dismissal and Plaintiff is prepared to amend his Complaint to add the new numbers.

## IV. PLAINTIFF'S SECTION 36(b) AND 47(b) CLAIMS AGAINST HARBOR FUNDS ARE PROPERLY STATED

In a separately filed motion to dismiss, nominal defendant Harbor Funds moves to dismiss the claims asserted on behalf of it on the ground that Plaintiff has improperly named it as a party. The thrust of Harbor Funds' argument is that Plaintiff cannot name Harbor Funds as a nominal defendant in its Section 36(b) claim and Section 47(b) claim[12] because the ICA expressly prohibits it being named as a party to either such claim and even if it was permitted, Plaintiff has failed to make a pre-suit demand, which is necessary to bring a derivative action on behalf of Harbor Funds.

---

[12] Plaintiff does not assert a separate claim under ICA Section 47(b), as mischaracterized by the Fund, but rather is seeking rescission pursuant to this code section as a remedy for the Section 36(b) violation against defendant Harbor Capital. While the Fund contends that rescission is not an available remedy for a violation of Section 36(b), Section 47(b) expressly permits any party to sue for rescission of contracts that violates any part of the ICA. *See* 80a-46(a)(1) (permitting the rescission of any contract "that is made, or whose performance involves, a violation of this subchapter" which includes Section 36(b)). A preponderance of federal courts have upheld a Section 36(b) plaintiff's right to seek rescission under Section 47(b). *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 743 F. Supp. 2d 744, 762 (W.D. Tenn. 2010); *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977); *Esplin v. Hirschi*, 402 F.2d 94, 103-04 & n.21 (10th Cir. 1968); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 880-81 (D. Md. 2005); *Wiener v. Eaton Vance Distribs. Inc.*, No. 10-10515-DPW, 2011 WL 1233131, at *12 (D. Mass. Mar. 30, 2011).

Harbor Funds argument is misguided because it is based on the faulty assumption that claims brought under the ICA must fall into one of two types of claims, either: (i) a direct claim; or (ii) a typical derivative claim which requires shareholders to make a presuit demand and satisfy other special procedural requirements to proceed. In fact, the ICA expressly provides that a Section 36(b) claim has elements of both types of claims --- on one hand it is a derivative claim that must be brought on behalf of the mutual fund at issue; but on the other hand, only a shareholder or the SEC, and not the Fund itself, is eligible to file such a claim, meaning the shareholders need not comply with any procedural requirements to establish standing to bring the suit (i.e., making a presuit demand). *See Fox v. Reich & Tang, Inc.*, 692 F.2d 250, 261 (2d Cir. 1982) ("[W]e believe neither policy nor logic compels application of the demand requirement to actions for return of excessive adviser fees."); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984) ("Rule 23.1 does not apply to an action brought by a shareholder under § 36(b) of the Investment Company Act and that the plaintiff in such a case need not first make a demand upon the fund's directors before bringing suit."). Accordingly, Plaintiff has properly named Harbor Funds as a nominal defendant in his Section 36(b) and Section 47(b) claims.

## V.     CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court to deny both Defendant Harbor Capital's Motion to Dismiss and nominal defendant Harbor Funds' Motion to Dismiss in their entireties.

Dated: May 20, 2014                                   ROBBINS ARROYO LLP


                                                      /s/ Stephen J. Oddo
                                      _____
                                      BRIAN J. ROBBINS
                                      STEPHEN J. ODDO
                                      EDWARD B. GERARD
                                      JUSTIN D. RIEGER
                                      600 B Street, Suite 1900
                                      San Diego, CA 92101

Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbinsarroyo.com
jrieger@robbinsarroyo.com

LASKY & RIFKIND, LTD
NORMAN RIFKIND
AMELIA S. NEWTON
351 W. Hubbard Street, Suite 401
Chicago, IL 60654
Telephone: (312) 634-0057
Facsimile:  (312) 634-0059
rifkind@laskyrifkind.com
newton@laskyrifkind.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: May 20, 2014

                                         /s/ Stephen J. Oddo
                                         STEPHEN J. ODDO

952737